**Jeff D. PAIGE, individually and on behalf of others similarly situated, Plaintiff–Appellee,**

v.

**STATE OF CALIFORNIA, Defendant–Appellant,**

**California Highway Patrol, Defendant–Appellant,**

Business, Transportation & Housing Agency, of the State of CA; Dwight Helmick, Commissioner of the Highway Patrol; Edward Gomez, Defendants–Appellants.

No. 95–56669.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1996.

Decided Dec. 20, 1996.

Silvia M. Diaz, Los Angeles, CA and Joel M. Cohn, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for defendants-appellants.

Dennis M. Harley, and Della Bahan, Rothner, Segall & Bahan, Pasadena, CA, for plaintiffs-appellees.

Before: REINHARDT, KOZINSKI, and HAWKINS, Circuit Judges.

REINHARDT, Circuit Judge:

Appellants, the State of California, the California Highway Patrol,[1] the California Busi-

---

1. The California Highway Patrol is sometimes referred to as the CHP in this opinion.

ness, Transportation and Housing Agency, Maurice Hannigan, Commissioner of the California Highway Patrol, and Edward Gomez, collectively referred to as "defendants," appeal from the district court's issuance of an interim injunction in favor of the plaintiff, Jeff D. Paige, and the class he represents (the plaintiffs), and from the district court's orders certifying a class, denying the defendants partial summary judgment, and granting partial summary judgment to the plaintiffs. The district court's orders were issued in an action Paige brought alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. We conclude that we have jurisdiction over the appeals from the class certification and the partial summary judgment order in favor of the plaintiffs, as well as over the appeal from the interim injunction. While in this opinion we affirm the district court's decision to exercise jurisdiction over the class claims—because those claims do not exceed the scope of the charges filed by plaintiff Paige with the EEOC and the California Department of Fair Employment and Housing—we resolve the questions regarding the merits of the class certification order, as well as the merits of the summary judgment order and the interim relief order in a separate memorandum disposition filed herewith.

## BACKGROUND.

On May 19, 1993, Paige, an African–American lieutenant in the California Highway Patrol, filed a discrimination charge with the California Department of Fair Employment and Housing (DFEH) alleging that a promotional examination was biased, unrelated to the job in question and resulted in discrimination on the basis of race. Several days later, on May 28, he filed a similar charge with the Equal Employment Opportunity Commission (EEOC). On the same date on which Paige filed his charge with the

EEOC, the DFEH referred his earlier charge to the federal agency. The DFEH served the California Highway Patrol with written notice of the referral. On January 5, 1994, Paige filed a class action in the district court against the defendants, alleging violations of Title VII. The complaint alleged both disparate impact and disparate treatment in the California Highway Patrol's promotion process.[2]

On July 12, 1994, after considering the pleadings and arguments of the parties, the district court certified a class consisting of "all past, present and future non-white sworn employees in the California Highway Patrol who have been, are, or will be discriminated against with regard to the terms and conditions of their employment because of their race, including the denial of job assignments, transfers, promotions and other benefits of an effective affirmative action program as the result of the operation of current practices."

Both sides moved for partial summary judgment on the basis of statistical evidence submitted by their respective experts. On March 29, 1995, the district court, relying on the plaintiffs' statistics, found that the plaintiffs had established that the "CHP's promotion policy is a continuing violation of Title VII." Accordingly, the district court denied the defendants' motion for partial summary judgment and granted partial summary judgment to the plaintiffs on the disparate impact claim.

Following the rulings, the district court appointed a magistrate judge to serve as special master. After extensive briefing and oral argument, the special master issued a report and recommendation for interim relief. He proposed a system of provisional appointments for all promotions until the district court entered a permanent injunction. On November 3, 1995, the district court adopted the special master's recommendation, and ordered that, pending issuance of a

---

2. The CHP has six ranks: officer, sergeant, lieutenant, captain, assistant chief and deputy chief. The CHP must hire from promotional eligibility lists which are comprised of qualified people from the preceding rank. California Vehicle Code § 2251. The promotional exam to advance to the next rank varies from level to level. Promotional exams are offered for the various positions approximately every two years. Based on a combination of written examinations, statement of qualifications, and oral interview scores, the CHP compiles a ranked promotion eligibility list. Promotees are selected from the lists as vacancies occur, in the order in which they are ranked on the lists.

permanent injunction, promotions be awarded at rates equal to or exceeding an external availability measure.[3]

On November 22, 1995, the defendants filed an appeal from the district court's grant of interim injunctive relief, as well as the district court's class certification and summary judgment orders.[4]

## DISCUSSION

In this opinion, we address whether: (1) we have jurisdiction to review the district court's grant of interim relief; (2) we have jurisdiction to consider the summary judgment and class certification orders; and, (3) the district court properly exercised jurisdiction over the plaintiffs' class claims.

### A.

Defendants appeal pursuant to 28 U.S.C. § 1292. That statute grants this court jurisdiction over "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where direct review may be had in the Supreme Court." 28 U.S.C. § 1292(a)(1) (1995). The defendants appeal of the district court's order granting interim relief falls squarely within the scope of § 1292(a)(1). Nonetheless, relying on *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) and *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), the plaintiffs contend that this court lacks jurisdiction unless defendants can establish "serious, perhaps irreparable, consequence[s]." This argument is without merit.

*Shee Atika v. Sealaska Corporation*, 39 F.3d 247 (9th Cir.1994), is directly on point. There, we rejected virtually the identical argument. We stated:

[i]n *Carson,* the Supreme Court considered whether section 1292(a)(1) permitted appeal from an order denying the parties' joint motion for approval of a consent decree that contained an injunction as one of its provisions. Because the order did not, on its face, deny an injunction, an appeal from the order did not fall precisely within the language of section 1292(a)(1). The Court nevertheless permitted the appeal. The Court stated that, while section 1292(a)(1) must be narrowly construed in order to avoid piecemeal litigation, it does permit appeals from orders that have the "practical effect" of denying an injunction, provided that the would-be appellant shows that the order "might have a serious, perhaps irreparable, consequence."

We find nothing in *Carson* to suggest that the requirement of irreparable injury applies to appeals from orders specifically denying injunctions. *Carson* merely expanded the scope of appeals that do not fall within the meaning of the statute. Sealaska appeals from the direct denial of a request for an injunction. *Carson,* therefore, is simply irrelevant.

*Id.* at 249 (citation omitted).[5] So, too, in this case, the CHP appeals from the specific grant of a request for an injunction. Accordingly, *Carson* is simply irrelevant, and we have jurisdiction over the CHP's appeal under § 1292 even though the CHP has not alleged irreparable harm.

### B.

"Section 1292(a)(1) 'creates an exception from the long-established policy against piecemeal appeals, which [we are] not authorized to enlarge or extend.'" *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 209 (3d Cir.1990) (quoting *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978)).

---

3. Finding the internal pool of non-white applicants for supervisory positions to be inadequate, the district court employed an external availability measure drawn from census statistics. This measure established the pool of qualified non-white law enforcement officers in the state.

4. Other claims, including the disparate treatment claim, remain to be decided in the district court.

5. In *Shee Atika,* we noted that our conclusion regarding the scope of *Carson* was "consistent with that reached by the overwhelming majority of courts of appeal that have considered the issue." *Id.* at 249 n. 2 (collecting cases).

The Supreme Court has cautioned that this statute should be applied "somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." *Switzerland Cheese Assoc., Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 24, 87 S.Ct. 193, 194–95, 17 L.Ed.2d 23 (1966). Accordingly, we have held our jurisdiction under § 1292(a)(1) extends only to the "matters inextricably bound up with the injunctive order from which the appeal is taken." *Self-Realization Fellowship Church v. Ananda*, 59 F.3d 902, 905 (9th Cir.1995) (citing *Trans-World Airlines v. American Coupon Exch.*, 913 F.2d 676, 680 (9th Cir.1990)); *Bernard v. Air Line Pilots Ass'n*, 873 F.2d 213, 215 (9th Cir.1989).

The defendants ask us to review the district court's orders: (1) certifying the plaintiff class; (2) granting the plaintiffs partial summary judgment; and (3) denying defendants partial summary judgment. Defendants contend that those orders are subject to review because they are "inextricably bound up with the November 3 injunction." We address our jurisdiction to consider those orders in turn.

■ We have only once reviewed an order certifying a class that was combined with an order granting an injunction. *Fentron Industries, Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300 (9th Cir.1982). That case, however, is no longer controlling authority. In *Fentron*, we did not apply the "inextricably bound up" test. Instead, we stated that jurisdiction extended "to all the issues that underlie the order" granting the injunction. 674 F.2d at 1304. We then concluded: "We ... exercise our discretion to review class certification and standing issues. Inasmuch as we consider matters related to these issues, the interests of judicial economy are best served by broaching them now." *Id.*

The related issues/interests of judicial economy test of *Fentron* did not survive the Supreme Court's recent decision in *Swint v. Chambers County Commission*, —— U.S.

——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). In *Swint*, the Court held that the Eleventh Circuit improperly exercised pendent appellate jurisdiction over an otherwise nonappealable collateral order.[6] The Eleventh Circuit had reviewed the district court's denial of the county's summary judgment motions, as well as the district court's denials of the individual defendants' motions for qualified immunity, in the interests of "judicial economy." —— U.S. at ——, 115 S.Ct. at 1208. Without attempting to "definitively or preemptively settle ... whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves appealable," the Court suggested that a nonappealable ruling would at least have to be "inextricably intertwined" with an appealable ruling or "that review of the former decision [would have to be] necessary to ensure meaningful review of the latter." *Id.* at ——, 115 S.Ct. at 1212.

Following precedent from other circuits, and consistent with *Swint,* we find that the class certification order in this case is inextricably bound up with the grant of the interim injunction. Because the injunction issued here provides class-wide relief, we could not uphold it without also upholding the certification of the class. *See Zepeda v. INS*, 753 F.2d 719, 728 n. 1 (9th Cir.1983) ("Without a properly certified class, a court cannot grant relief on a class-wide basis."). The certification of the class is therefore inextricably intertwined with the issuance of the interim injunction because effective review of the injunction requires review of the class certification. *See Hartman v. Duffey*, 19 F.3d 1459, 1464 (D.C.Cir.1994) ("Only if the scope of the trial court's class certification as well as the merits of the class hiring discrimination claim with respect to foreign service officers is sustainable, can the court's 1992 decision to allot thirty-nine remedial foreign service positions withstand attack."); *Hoxworth*, 903 F.2d at 209 (finding that court of appeals lacked jurisdiction to review the denial of class certification because it indepen-

---

6. The Court said that a rule loosely allowing pendent jurisdiction "drift[s] away from the statutory instructions Congress has given to control the timing of appellate proceedings," encouraging parties "to parlay ... collateral orders into multi-issue interlocutory appeal tickets...." *Swint,* —— U.S. at ——, ——, 115 S.Ct. at 1209, 1211.

dently found that the preliminary injunction could not stand, but suggesting that it would have had jurisdiction had it upheld the preliminary injunction because "this preliminary injunction could not conceivably be *upheld* unless the class certification order were also reviewed and upheld").[7]

We have on several occasions considered whether a summary judgment order is inextricably intertwined with an injunction. We have stated that "[a] summary judgment order that provides the legal authority to issue an injunction—that constitutes a 'necessary predicate' to complete review of the injunction—is inextricably bound up with the injunction." *Self–Realization Fellowship Church*, 59 F.3d at 905; *see MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir.), *cert. dismissed*, 510 U.S. 1033, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994) (concluding that grant of permanent injunction was inextricably intertwined with decision on the merits and finding that summary judgment orders were reviewable); *Bernard*, 873 F.2d at 215; *accord Cohen v. Board of Trustees of Univ. of Medicine and Dentistry of N.J.*, 867 F.2d 1455, 1468 (3d Cir.1989) (en banc) (holding that because grant of preliminary injunctive relief was premised on summary judgment liability determination, the summary judgment determination was inextricably bound up in the review of the injunction).[8] Here, we find the partial summary judgment order in favor of the plaintiffs to be inextricably intertwined with the interim injunction.

Review of the order is a necessary predicate to review of the injunction because the relief provided in the injunction was based on the fact that the merits of the disparate impact issue had been resolved. The purpose of the interim injunction was to protect the plaintiffs' interests pending issuance of the final injunctive order in their favor. That purpose underlay the district court's determination as to the nature and scope of the interim relief granted.

Accordingly, because the summary judgment and class certification orders are inextricably intertwined with the grant of the interim injunction, we have jurisdiction to consider both. One issue remains. The defendants ask that we also review the denial of its motion for partial summary judgment. Whether to assume jurisdiction over the denial of summary judgment to one party when we exercise jurisdiction over the grant of summary judgment to another is a question we have not heretofore considered. There is no need for us to decide that question, however, in this case. As we state in our contemporaneously filed memorandum disposition—in connection with our consideration of the award of partial summary judgment to the plaintiffs—the facts are not sufficiently developed to allow our resolution of the issues involved in the competing summary judgment motions. Accordingly, reviewing the defendants' motion would serve no legitimate purpose.

**7.** *See also Wagner v. Taylor*, 836 F.2d 578, 584 (D.C.Cir.1987) (finding that the district court had "expressly rejected the motion [for a preliminary injunction] 'in light of' its contemporaneous denial of class certification," and concluding that "[w]ithout review of the determination on class certification, effective review of the order on the injunction request would be seriously impaired"); *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. and N.J.*, 698 F.2d 150, 152–53 (2d Cir.1983) (finding issue of class certification inextricably intertwined with appealable order where denial of request for preliminary injunction was based *solely* on denial of class certification).

**8.** Nonetheless, we have "expressed reluctance to review a denial of summary judgment when reviewing a preliminary injunction." *Marathon Oil Co. v. United States*, 807 F.2d 759, 764 (9th Cir.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct.

1593, 94 L.Ed.2d 782 (1987). In *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir.1984), where we were asked to review an order denying summary judgment and denying reconsideration of an order granting a preliminary injunction, we stated:

> Phoenix invites us to review the summary judgment denial, arguing that it involves the same issues as the injunction. We disagree and decline the invitation. We exercise our pendent jurisdiction in "the interests of economy." The salient issues on review of this injunction are the potential hardship to the parties and whether Sierra has a fair chance of success on the merits. Review of the summary judgment motion, in contrast, would call for conclusive resolution of the merits. This case is in the early stages of discovery; the record is not well developed. This Court will not attempt now to decide conclusively the merits of the case.

*Id.* at 1421.

## C.

We next address the defendants' contention that the district court erred "in certifying a class on plaintiffs' disparate impact in promotions where class claims were not raised in plaintiff's administrative charge of discrimination." Defendants argue that the scope of the judicial complaint impermissibly exceeds the scope of the administrative charge. We disagree.

To establish federal subject matter jurisdiction, a plaintiff must exhaust his administrative remedies before filing a federal complaint. As we have explained, " '[t]he jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.' " *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990)). The district court here had jurisdiction over the plaintiffs' claim of class discrimination in promotion if "that claim fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which [*could*] *reasonably be expected* to grow out of the charge of discrimination." *Id.* (citation and internal quotation marks omitted).

In his original complaint filed with the DFEH Paige alleged that he was denied a promotion because of

an alleged failure to achieve a high enough score on the promotional examination for State Traffic Captain, which examination was biased, discriminatory, non job-related, non valid and not in conformance with all applicable federal and state laws, rules and regulations ... in that the examination was conducted without consideration of an effective affirmative action program.

This complaint was referred to the EEOC pursuant to a workshare agreement which requires that "copies of all complaints received by one agency are sent to the other for filing." 2 M. Kirby Wilcox, ed., *California Employment Law* § 42.24 (1996). Put another way, "the filing of a charge with one agency is 'deemed' to be a filing with both." *McConnell v. General Telephone Co. of California*, 814 F.2d 1311, 1315 (9th Cir.1987), *cert. denied*, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988). *See also Green v. Los Angeles County Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir.1989). On May 28, 1993 the DFEH notified defendants that the complaint was being processed by the EEOC and the DFEH was "closing its case." Thus, with the full knowledge of the parties, the EEOC assumed jurisdiction of the complaint Paige filed with the DFEH and the DFEH complaint became a part of the EEOC charge. While the separate EEOC charge filed on the date of transfer of the DFEH charge, did not repeat the general allegations set forth in the charge filed with the state, its allegations must be read as supplementing, rather than replacing the earlier document.

We have considered in various contexts whether a federal complaint impermissibly exceeds the scope of the agency charges. *See Shah v. Mount Zion Hosp. and Medical Ctr.*, 642 F.2d 268 (9th Cir.1981) (theories of discrimination, i.e., religion, race and color, not raised before EEOC); *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973) (incidents not alleged in EEOC charge). We have never considered, however, whether a charge not explicitly raising class claims could support a class action. Only two circuits have done so and have reached different results. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124 (7th Cir.1989); *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447 (5th Cir.), *cert. denied*, 464 U.S. 828, 104 S.Ct. 102, 78 L.Ed.2d 106 (1983). We follow the approach used in *Fellows*. We believe it to be more consistent with the statutory purpose and the large body of case law holding that employment discrimination charges are to be construed "with the utmost liberality." *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 78 (5th Cir.1982) (citing *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112 (5th Cir.1981)); *accord Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir.1990); *Kaplan v. Intl. Alliance of Theatrical and Stage Employees*, 525 F.2d 1354, 1359 (9th Cir.1975) (collecting cases). We are also required to follow *Fellows*, 701 F.2d 447, rather than *Schnellbaecher*, 887 F.2d 124, by the approach we adopted in *Farmer*, 31 F.3d at 899.

In *Fellows*, the defendant argued, as defendants do here, that the plaintiff's charge could not support a class complaint. In that case, the plaintiffs charged individual discrimination: that "she 'was paid less and discharged because of [her] sex, female,' and that her application[ ] for various supervisor positions in the establishment were denied 'because of my sex, female.'" *Id.* at 451. The court concluded that, "[g]iven the liberal construction accorded EEOC charges, especially those by unlawyered complainants," the wording of the plaintiff's charges "could ... be understood to complain of discriminatory treatment of all women applicants and employees...." *Id.* Moreover, even if the charges did not describe class claims, the court concluded, "[t]he scope of [the plaintiffs'] judicial complaint could include class action allegations, since EEOC investigation of class discrimination against women *could reasonably be expected* to grow out of her allegations in her initial EEOC charge." *Id.* See *Farmer*, 31 F.3d at 899.

Here, as in *Fellows*, even if neither the EEOC nor the DFEH charges on their face explicitly alleged class discrimination, it is plain that an EEOC investigation of class discrimination on the basis of race *could reasonably be expected* to grow out of the allegations in the charges. *Id.* See *Farmer*, 31 F.3d at 899. The DFEH charge alleged that the examination which determined eligibility for promotion was "biased, discriminatory, non job-related, [and] conducted without consideration of an effective affirmative action program." Thus, appellants were informed that Paige's complaint concerned the overall promotional process and was not limited to an isolated act of discrimination by one individual against another. A class-based investigation and lawsuit could *reasonably be expected to grow* out of the allegations that the examination process used by the CHP for promotion was inherently biased against blacks. In fact, such a class action was almost inevitable, given the charges that were both filed with and transferred to the EEOC.

Investigation of a charge that a promotional examination is biased and frustrates the goals of an overall affirmative action policy necessarily involves an examination of the promotional system and of the role, if any, that race plays in that system. Specifically, in this case, a claim of racial discrimination in the examination process that determines eligibility for promotion would necessarily result in an investigation of the CHP's promotion practices, interview system, and any pattern of racial discrimination that results from the administration of the agency's procedures. In short, the race of all those who apply for promotions and all those who receive promotions would be a vital component of any investigation. Thus, an investigation of class claims could reasonably have been expected to result from plaintiff Paige's charge of discrimination, *see Farmer Bros.*, 31 F.3d at 899, and a class action is permissible.[9]

9. The defendants rely on *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124 (7th Cir.1989), which held that neither the allegations in the charge nor the investigation that could reasonably be expected to grow out of it would have put the defendants on notice that the plaintiffs intended to file a class action complaint. The court in *Schnellbaecher* relied primarily on the charge in determining that the scope of the complaint was too broad. Having found that the charge was insufficient to put the employer on notice of allegations of class-wide discrimination because it related to an individual, it found that an investigation of the charge could likewise not reasonably be expected to encompass class claims. In so doing, it effectively held that the scope of the investigation that could reasonably be expected would be as limited as the scope of the charge itself, and for all practical purposes eliminated the "reasonably to be expected investigation" factor from the test. This is contrary to the law of our circuit. *See Farmer Bros.*, 31 F.3d at 899. We disagree with the approach used in *Schnellbaecher* because the investigation that actually results or that can reasonably be expected to result from a charge filed by an individual is not limited by the literal terms of the charge. *Cf. Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990) ("'EEOC charges must be construed with the utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'") (citation omitted). Indeed, in *Schnellbaecher*, the charge, which the court construed not to encompass class claims, actually led to an investigation that included "a questionnaire that sought payroll records for all sales persons and an explanation for the differences between the salaries of male and female sales persons." 887 F.2d at 128. As we have explained in the text, a charge of racial discrimination in promotion can reasonably be expected to result in an investigation that is sufficiently

Accordingly, we conclude that the scope of the judicial complaint did not impermissibly exceed the scope of the charge. Paige's filing of a class action was proper.

## CONCLUSION

We conclude that we have jurisdiction to review the district court's grant of interim relief, and that we have jurisdiction to review the partial summary judgment order in favor of the plaintiffs as well as the class certification order, because the latter two orders are inextricably intertwined with the former. We also conclude that the scope of the judicial complaint did not improperly exceed the scope of the EEOC charge, and that the district court therefore properly exercised jurisdiction over the plaintiffs' class claims.

AFFIRMED as to jurisdiction.

broad to put an employer on notice of the potential for a complaint alleging class-based discrimination.