Marciano PLATA; Otis Shaw; Ray Stoderd; Joseph Long; Leslie Rhoades; Gilbert Aviles; Paul Decasas; Steven Bautista, and all others similarly situated; Raymond Johns; Elijah J. Sandoval; Gary Alan Smith; Clifford Myelle, Plaintiffs–Appellees,

v.

Grey DAVIS; B. Timothy Gage; Robert Presley; Susann Steinberg, Defendants–Appellants,

and

Daniel Thor; MTA Cooper; T. Bui; Donald Calvo; Shankar Raman; Brian Yee; D. Smith; M.A. Van Pelt; Bhaviesh Shah; Andrew Wong; Daniel Fuller; Michael Songer; M. Levin; Joseph Siegel; Edgar Castillo; Mohan Sundareson; Clinton; Sanford Hepps; Stephen Wyman; L. Richnak; Richard Sandham; C. Park; Teresa Rocha, Acting Director Department of Corrections, Defendants.

No. 02–16161.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 2003.

Filed May 27, 2003.

John M. Applebaum, Supervising Deputy Attorney General, Sacramento, CA, for the defendants-appellants.

Donald Specter, Prison Law Office, San Quentin, CA, and Caroline N. Mitchell,

Pillsbury Winthrop LLP, San Francisco, CA, for the plaintiffs-appellees.

Before: NOONAN, TASHIMA, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge.

This is an appeal from an interlocutory order denying defendants' motion to exclude certain members from the plaintiff class. A stipulated judgment was entered thereafter, from which defendants did not appeal. Because the order appealed from is not a final order under 28 U.S.C. § 1291, lacked the practical effect of granting or denying injunctive relief, and defendants took no other steps to preserve a right of appeal as to it, we dismiss the appeal for lack of jurisdiction.

## I. Background

### A. *Shumate* litigation

On April 4, 1995, present and future inmates confined at the California Institution for Women ("CIW") in Frontera, California, and at the Central California Women's Facility ("CCWF") in Chowchilla, California, filed a class action against numerous defendants, including most significantly the Governor of California, the California Director of Finance, the Secretary of the Youth and Adult Correctional Agency, the Director of the California Department of Corrections ("CDC"), and the Deputy Director for Health Care Services for the Department of Corrections, in the United States District Court, Eastern District of California. *Shumate v. Wilson,* No. CIV S–95–0619 (E.D.Cal.2000). The *Shumate* plaintiffs sought injunctive relief to remedy alleged "policies, practices, acts, and omissions evidenc[ing] and constitut[ing] deliberate indifference to the rights of prisoners and violat[ing] the Cruel and Unusual Punishment Clause of the Eighth Amendment." The complaint alleged that defendants furnished inadequate sick call, triage, emergency care, nurses, urgent care, chronic care, specialty referrals, medical screenings, follow-up care, examinations and tests, medical equipment, medications, specialty diets, terminal care, health education, dental care, and grievance procedures, and that the provision of medical care featured unreasonable delays and disruptions in medication.

On January 12, 1996, the district court certified a plaintiff class, defined as all persons suffering from, or at risk of developing, serious illness or injury, excluding mental disorders, who were then or would be in the future confined at CIW and CCWF. It also certified a subclass, defined as all persons who were then or would be in the future confined at CIW and CCWF and who were diagnosed as HIV positive. After two years of litigation and negotiation, on August 11, 1997, the parties entered into a court-approved settlement agreeing to independent audits of the CIW and CCWF healthcare systems to determine their compliance with the parties' settlement provisions as to 56 aspects of care.[1]

---

1. The 56 specific areas addressed in the settlement agreement were:

medical screening, privacy of medical information at screening; medical staff collection of health service request forms; MTAs' performance within the scope of their licenses; sick call request submissions; 24-hour triage by RNs; health care staff evaluation of sick call request forms; waiting time for sick call; maintenance of the ER equipment; RN availability in the ER; ambulance response time; compliance with Skilled Nursing Facility licensing and Outpatient Housing Unit policies; medical staff

On December 20, 1999, the independent assessor issued a final report stating that CIW and CCWF substantially complied with the *Shumate* settlement terms, meeting criteria for 44 of the parties' 56 settlement provisions. The assessor noted seven areas of concern that precluded a finding of full compliance: 1) bus screenings, medication continuity, and physician referrals; 2) the wait for sick call; 3) the integration of diagnostic testing results into regular chronic care; 4) educational and preventative aspects of chronic care; 5) mental health staff at CCWF; 6) HIV-positive medication distribution at CIW; and 7) CIW's physical therapy program. On August 21, 2000, pursuant to the parties' stipulation and Federal Rule of Civil Procedure 41(a)(1)(ii), the district court dismissed the *Shumate* class action with prejudice.

Following the dismissal, in February 2002, Dr. Ronald Shansky, a physician and consultant for the CDC, audited CIW's and CCWF's compliance with the *Shumate* settlement provisions. After examining medical records, log books, policies, procedures, and meeting minutes, and observing health services furnished to CIW and CCWF inmates, Dr. Shansky found eleven areas of non-compliance at CIW and only two at CCWF.[2] He opined that the deficiencies at CIW and CCWF were easily correctable.

## B. *Plata* class action

A year after *Shumate* was dismissed, on August 20, 2001, ten male California inmates filed a complaint against many of the same defendants as in *Shumate,* alleging that the CDC's inadequate medical care system violated the Cruel and Unusual Punishment Clause of the Eighth Amendment, as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and section 504 of the

---

response to call buttons and RNs' regularly scheduled rounds; placement of inmates in conformance with Skilled Nursing Facility and Outpatient Facility policies; custodial staff's performance of medical functions; standards for determining whether an inmate should be housed in the Skilled Nursing Facility; receipt and review of diagnostic tests; implementation of a chronic care program; assessment of inmates with chronic diseases for which CDC had no guidelines to determine whether chronic care enrollment was indicated; implementation of TB control guidelines; availability of a public health RN and an infectious diseases consultant; maintenance of full health care staff; maintenance of on-call physician 24 hours a day 7 days a week; availability of palliative treatment; whether medical authorization review decisions were documented in records and inmates consulted; posting of posters concerning preventative care; conversions of medical records into a single record; prompt filing of medical records; forms for release of information to outside providers; continuity of medications; availability of medical supplies and equipment; availability of physical therapy; special medical diets; dental services availability; dental services and timeliness; physical examinations; social workers for terminally ill; staff training for mental care; implementation of quality assessment and improvement program; training regarding HIV confidentiality; and pill lines and confidentiality.

2. The areas of concern at CIW included inadequate medical screening at reception; the lack of face-to-face triage by RNs within 24 hours of receipt of sick-call slips; inadequate maintenance of ER equipment and supplies; instances of ER responses containing documentation by an MTA without adequate high-licensure review; inability to locate ER response review committee minutes; records lacking documentation of lab result discussion with patients; loose filing and misfiling of reports; missing ER supplies and equipment; non-functioning call buttons in the Out-patient Housing Unit, inadequate supervision ensuring confidentiality in pill lines; and inmates found performing clerical duties in the medical area. The two areas of non-compliance at CCWF concerned incorrect filings in some medical records and the lack of a dental quality assurance program.

Rehabilitation Act, 29 U.S.C. § 794. These allegations are virtually identical to those raised in *Shumate*.[3]

On January 28, 2002, the parties stipulated to injunctive relief. The stipulation called for the CDC to implement Health Care Services Division Policies and Procedures "designed to meet or exceed the minimum level of care necessary to fulfill the defendants' obligation to plaintiffs under the Eighth Amendment of the United States Constitution." Under the stipulation, CDC institutions became subject to a schedule of audits to determine their compliance with the Policies and Procedures. They are also required to provide access to records, information, housing, and persons including staff and inmates.

The stipulation's enforcement provisions provide that "[t]he court shall find that this Stipulation satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) and shall retain jurisdiction to enforce its terms." The parties agreed to disagree as to whether the stipulated relief would apply to inmates at CIW and CCWF but that upon motion by defendants the district court would resolve the question:

> The parties disagree about whether prisoners incarcerated at the California Institution for Women (CIW) and the Central California Women's Facility (CCWF), previously litigated in a class action entitled *Shumate v. Wilson* (E.D.Cal.) CIV S–95–0619 WBS JFM P,

should be members of the class. To resolve this dispute defendants shall move within sixty days after this Stipulation is approved by the Court for an order determining whether prisoners at CCWF and CIW should be excluded from the class on the sole ground that they are not similarly situated to plaintiffs because of the previously litigated class action entitled. The motion will not otherwise alter the burden of proof under Rule 23 or create a presumption concerning their inclusion.

The parties did not provide for appeal of the district court's order by either the plaintiff class or defendant.

As provided in the stipulation, defendants moved on March 19, 2002 to exclude CIW and CCWF inmates from the plaintiff class. On May 21, 2002, following briefing and a hearing, the district court denied defendants' motion, ordering that the CIW and CCWF inmates be included in the class. Defendants filed a notice of appeal from that order on June 3, 2002. The district court held a fairness hearing on the class settlement on June 13, 2002, and entered a final order adopting the class action stipulation on June 20, 2002. That final order was not appealed by either side.

## II. Discussion

Defendants assert that we have jurisdiction over this matter pursuant to 28 U.S.C.

---

**3.** The *Plata* class alleges that:

the CDC has insufficient numbers of qualified medical staff; medical personnel lack training and supervision; medical records are disorganized and incomplete; the medical screening of incoming prisoners is lacking; there are delays and failures in accessing medical care, including referrals to see specialists; laboratory and other medical tests are frequently delayed; responses to emergencies are untimely; correctional officers frequently interfere with the provision of medical care; quality control procedures are lacking; established protocols for dealing with chronic illnesses are lacking; inmates are not informed of potential side effects of medications; competent, sufficient medical staff are difficult to recruit and retain; necessary medical care is often denied based solely on an inmate's expected release date; defendants lack sufficient knowledge about the medical care system to properly monitor and improve it; and the administrative grievance system often does not provide timely or adequate responses to complaints about medical care.

§ 1292 and Federal Rule of Civil Procedure 23(f). Because defendants' appeal has no relation to either receiverships, *see* 28 U.S.C. § 1292(a)(2), or to rights in admiralty, *see* 28 U.S.C. § 1292(a)(3), we must examine whether the order appealed from had the practical effect of granting or denying an injunction so as to support jurisdiction under 28 U.S.C. § 1292(a)(1). We hold that it did not. Nor is jurisdiction sustainable under either 28 U.S.C. § 1292(b) or Federal Rule of Civil Procedure 23(f), because defendants failed to request permission to file an interlocutory appeal. Therefore, we lack jurisdiction over this appeal.

### A. Jurisdiction under § 1292(a)(1)

██ The parties recognize that the district court's order denying exclusion of the CIW and CCWF inmates from the plaintiff class was not a final order for purposes of appeal. This order is best interpreted as a decision to maintain or expand the grant of class certification, comparable to class certification orders. Class certification orders generally are not immediately appealable. *Bauman v. United States Dist. Court,* 557 F.2d 650, 663 (9th Cir.1977) (Hufstedler, J., concurring) ("[G]enerally an order certifying a class action is a non-appealable interlocutory order."); *see also* Schwarzer, Tashima, & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial §§ 10–620, 10–621 (2002); James Wm. Moore et al., Moore's Federal Practice § 23.61[9][b] (3d ed. 2002).

Defendants nevertheless suggest that we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) because the district court's order had the practical effect of granting or denying injunctive relief. Section 1292(a)(1) allows courts of appeal to review interlocutory orders "granting, continuing, modifying, refusing or dissolving ... or refusing to dissolve or modify injunctions...." Although defendants acknowl-edge that the order they appealed from does not technically grant, deny, modify, refuse, or dissolve an injunction, they cite a line of cases beginning with *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), which permit appellate jurisdiction over orders that have the "practical effect" of granting, denying, or modifying injunctive relief. *Id* at 83, 101 S.Ct. 993.

In *Carson,* the Supreme Court considered whether § 1292(a)(1) jurisdiction existed to review a district court order denying the entry of a stipulated consent decree. Reasoning that "the proposed decree would have permanently enjoined respondents from discriminating against black employees," *id.* at 84, 101 S.Ct. 993, and required other prospective relief, the Court concluded that although the "decree did not in terms 'refuse an injunction,' it nonetheless had the practical effect of doing so," *id.* at 83, 101 S.Ct. 993. It made clear, however, that "[f]or an interlocutory order to be immediately appealable under § 1292(a)(1), ... a litigant must show ... [1] that [the] interlocutory order of the district court might have a 'serious, perhaps irreparable, consequence,' and [2] that the order can be 'effectually challenged' only by immediate appeal...." *Id.* at 84, 101 S.Ct. 993 (quoting *Baltimore Contractors v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 99 L.Ed. 233 (1955)); *see also Paige v. California,* 102 F.3d 1035, 1038 (9th Cir.1996) (acknowledging that § 1292(a)(1) "does permit appeals from orders that have the 'practical effect' of denying an injunction, provided that the would-be appellant shows that the order 'might have a serious, perhaps irreparable, consequence'" (quoting *Shee Atika v. Sealaska Corp.,* 39 F.3d 247, 249 (9th Cir.1994))); *Thompson v. Enomoto,* 815 F.2d 1323, 1326–27 (9th Cir.1987) (reiterating *Carson's* § 1292(a)(1) jurisdictional analysis).

While the order at issue had the practical effect of modifying the composition of the plaintiff class, it could not possibly have had the practical effect of establishing or modifying injunctive relief. First, it did not grant or deny any injunctive relief by its terms. Second, it could not have continued, modified, or dissolved any injunctive relief, because at the time the order was entered no injunctive relief was in place. Appellants' novel characterization of the order before us ignores the simple fact that there was no court-ordered relief in this case until the district court approved the parties' stipulation for injunctive relief on June 20, 2002, seventeen days after defendants filed their appeal. All of the cases cited by defendants address the grant, denial, or modification of court-ordered injunctive relief such as a consent decree, *see Carson*, 450 U.S. at 83–84, 101 S.Ct. 993; *Paige*, 102 F.3d at 1038 (involving district court's interim order promoting non-white law enforcement officers at a specified rate); *Thompson*, 815 F.2d at 1326–27 (involving consent decree ordering various changes in prison conditions).

■ Citing *Paige*, appellants alternatively suggest that the district court's order is immediately appealable because it is "inextricably bound up" with an immediately appealable order. *Paige*, however, is inapposite. There, a reviewable final order granting injunctive relief was properly appealed. Noting that we "have held our jurisdiction under § 1292(a)(1) extends only to the 'matters inextricably bound up with the injunctive order from which the

appeal is taken,'" we concluded that our jurisdiction extended to the class-certification order because the injunction at issue provided class-wide relief and could not be upheld "without also upholding the certification of the class." *Id.* Unlike in *Paige*, appellants did not appeal from the final order granting injunctive relief. Had they done so, they would be better situated to urge that the inclusion of CIW and CCWF in the class is an issue "inextricably intertwined" with a properly reviewable final order.

**B. Jurisdiction under § 1292(b) and Rule 23(f)**

■ Although appellants appear to have abandoned their opening brief's suggestion that we may assert jurisdiction pursuant to Federal Rule of Civil Procedure 23(f), this argument would be unavailing in any event. Appellants did not apply to either the district court or us for permission to file an interlocutory appeal. We may use our discretion to permit an appeal pursuant to Rule 23(f) only if "application is made ... within ten days after entry of the order." Although appellants filed a notice of appeal within ten working days of the entry of the order appealed from, it did not purport to be a petition for interlocutory appeal. Moreover, it fails to meet the criteria for such petitions established by Federal Rule of Appellate Procedure 5(b).[4]

Nor did appellants comply with the terms of 28 U.S.C. § 1292(b), which provides for application to the district court for permission to seek an interlocutory appeal.[5] We therefore lack jurisdiction

**4.** Federal Rule of Appellate Procedure 5(b)(1) requires that a petition for permission to appeal contain: the facts necessary to understand the question presented; the question itself; the relief sought; the reasons why the appeal should be allowed and is authorized by statute or rule; and an attached copy of the order, decree, or judgment complained of and any related opinion or memorandum, and any

order stating the district court's permission to appeal or finding that the necessary conditions are met.

**5.** 28 U.S.C. § 1292(b) provides that:

[w]hen a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling ques-

under either Rule 23(f) or § 1292(b) to entertain this appeal.

### III. Conclusion

Because there is no reviewable final order properly before us and none of the prerequisites for interlocutory appeal has been met, we lack jurisdiction over this appeal.

**DISMISSED.**

tion of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.