358 F.3d 1181
 ALSEA VALLEY ALLIANCE; Mark Sehl, Plaintiffs-Appellees,
v.
DEPARTMENT OF COMMERCE, being sued as William M. Daley; National Marine Fisheries Service; Penelope D. Dalton, Director NMFS; William Stelle, Jr., Defendants-Appellees,
Oregon Natural Resources Council; Pacific Rivers Council; Pacific Coast Federation of Fishermen's Association, Inc.; Institute for Fisheries Resources; Audubon Society of Portland; Coast Range Association; Siskiyou Regional Education Project; Sierra Club, Defendants-Intervenors-Appellants.
Alsea Valley Alliance; Mark Sehl, Plaintiffs-Appellants,
v.
Department of Commerce, being sued as William M. Daley; National Marine Fisheries Service; William T. Hogarth, Director NMFS; D. Robert Lohn, Defendants-Appellees,
Oregon Natural Resources Council; Pacific Rivers Council; Pacific Coast Federation of Fishermen's Association, Inc.; Institute for Fisheries Resources; Audubon Society of Portland; Coast Range Association; Siskiyou Regional Education Project, Defendants-Intervenors-Appellees, and
Sierra Club, Defendant-Intervenor.
 No. 01-36071.
 No. 01-36154.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 2003—Portland, Oregon.
 Filed February 24, 2004.
 
 Russell C. Brooks, Pacific Legal Foundation, Bellevue, Washington, for the plaintiffs-appellees-appellants.
 Ellen J. Durkee, U.S. Dept. of Justice, Washington, D.C., for the federal appellees.
 Patti Goldman, Earthjustice Legal Defense Fund, for the defendants-intervenors-appellees-appellants.
 Galen G. Schuler, Perkins Coie, Seattle, Washington; Peter J. Ampe, Assistant Attorney General, Denver, Colorado, for the amici curiae.
 Appeal from the United States District Court for the District of Oregon, Michael R. Hogan, District Judge, Presiding. CV-99-06265-HO.
 Before Donald P. LAY,* J. Clifford WALLACE, and Richard C. TALLMAN, Circuit Judges.
 WALLACE, Senior Circuit Judge.
 
 
 1
 Oregon Natural Resources Council and several other organizations (collectively Council) appeal from an order invalidating a National Marine Fisheries Service (Service) final rule and remanding to the Service for further consideration (Remand Order). The order that allowed the Council to intervene for purposes of bringing this appeal (Intervention Order) is challenged by Alsea Valley Alliance (Alsea), and opposed by the government on jurisdictional grounds, in a separately docketed companion case. We lack jurisdiction over both appeals, and accordingly we dismiss them.
 
 I.
 
 2
 Acting under authority derived from the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544, and pursuant to several of its own policies, the Service promulgated a final rule designating as "threatened" the "naturally spawned" populations of Oregon coast "Evolutionarily Significant Unit" (ESU) coho salmon, but excluding "hatchery spawned" populations from the "threatened" listing. See Threatened Status for the Oregon Coast Evolutionarily Significant Unit of Coho Salmon, 63 Fed. Reg. 42,587 (Aug. 10, 1998) (to have been codified at 50 C.F.R. pt. 227 (redesignated as pt. 223)). Alsea brought suit in federal court seeking in part to have the ESA listing overturned as invalid, and Alsea prevailed on summary judgment. Alsea Valley Alliance v. Evans, 161 F.Supp.2d 1154, 1163 (D.Or.2001). According to the district court, "[t]he central problem with the [Service] listing decision of August 10, 1998, is that it makes improper distinctions, below that of a [distinct population segment (DPS)], by excluding hatchery coho populations from listing protection even though they are determined to be part of the same DPS as natural coho populations." Id. at 1162. "Listing distinctions below that of subspecies or a DPS of a subspecies," the court continued, "are not allowed under the ESA." Id. The district court thus ruled that distinguishing between "hatchery spawned" and "naturally spawned" coho salmon was arbitrary and capricious. Id. at 1163.
 
 
 3
 In granting Alsea summary judgment, the district court remanded the case to the Service for additional consideration consistent with its decision. Id. at 1163-64. The Service was "further directed to consider the best available scientific information, including the most recent data, in any further listing decision concerning the Oregon coast coho salmon." Id. at 1164.
 
 
 4
 Instead of contesting the Remand Order on appeal, the Service informed the district court it would comply. The Service unveiled a four-step "Action Plan" that envisioned (1) a public rulemaking process to formulate ESA listing standards for salmon ESUs containing, in part, hatchery-raised fish, (2) application of these standards to all relevant salmon and steel-head ESUs, (3) interim local measures to continue the purported recent successes in rebuilding salmon populations, and (4) maintenance of the ESA listings for ESUs not covered by the district court's Remand Order. This "Action Plan" evinced the Service's intent to conduct a comprehensive review of its hatchery salmon policy along the West Coast. Subsequent agency action has confirmed that this exercise will not be limited to Oregon coast coho salmon. See Endangered and Threatened Species: Findings on Petitions to Delist Pacific Salmonid ESUs, 67 Fed.Reg. 6215 (Feb. 11, 2002) (to be codified at 50 C.F.R. pts. 223-24, 226) (soliciting information to assist in updating the ESA statuses of a variety of salmon ESUs).
 
 
 5
 Fearing that the Service would opt not to appeal the district court's order, the Council sought to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) and simultaneously lodged a Notice of Appeal. In its November 14, 2001, Intervention Order, the district court determined that the Service no longer adequately represented the Council's interests and ruled "that the applicants are permitted to intervene for purposes of appeal only." Alsea subsequently appealed from the Intervention Order. We have considered these appeals as companion cases so both the Intervention Order and Remand Order are before us. We stayed the Remand Order pending appeal.
 
 II.
 
 6
 Subject to a few exceptions discussed later, appellate jurisdiction only extends over "final decisions of the district courts," 28 U.S.C. § 1291, and remand orders generally are not "final decisions" for purposes of section 1291. Chugach Alaska Corp. v. Lujan, 915 F.2d 454, 457 (9th Cir.1990). A remand order will be considered "final where (1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, and (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." Collord v. United States Dep't of the Interior, 154 F.3d 933, 935 (9th Cir.1998). We need not decide whether the Remand Order meets the first two criteria because we conclude that the third prerequisite is lacking. Denying the Council an immediate appeal does not, as a practical matter, foreclose review.
 
 
 7
 In previous cases, the remand orders we have recognized as satisfying this requirement have been uniform in one respect: all were challenged on appeal by an administrative agency. See, e.g., id. at 935 (Secretary of the Interior); Rendleman v. Shalala, 21 F.3d 957, 959 & n. 1 (9th Cir.1994) (Secretary of Health and Human Services); Chugach Alaska Corp., 915 F.2d at 456 (Secretary of the Interior); Regents of the Univ. of Cal. v. Heckler, 771 F.2d 1182, 1186-87 (9th Cir.1985) (Secretary of Health and Human Services), overruled on other grounds by Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993); Kaho v. Ilchert, 765 F.2d 877, 880-81 (9th Cir.1985) (San Francisco District Director for the Immigration and Naturalization Service); Stone v. Heckler, 722 F.2d 464, 466-68 (9th Cir.1983) (Secretary of Health and Human Services). This is no mere coincidence. Rather, it underscores that only agencies compelled to refashion their own rules face the unique prospect of being deprived of review altogether. An agency, after all, cannot appeal the result of its own decision. Chugach Alaska Corp., 915 F.2d at 457 ("Should the Secretary lose on remand, there would be no appeal, for the Secretary cannot appeal his own agency's determinations."). From the agency's standpoint, in other words, a remand order is "final."
 
 
 8
 Although we conceive of none, there may be circumstances that would afford a non-agency litigant the ability to appeal a remand order, but we need not reach that question. Our decision reaffirms that we will not exercise our jurisdiction over a remand order unless "a holding of nonappealability would effectively deprive the litigants of an opportunity to obtain review." Stone, 722 F.2d at 467; see also Shapiro v. Paradise Valley Unified Sch. Dist. No. 69, 152 F.3d 1159, 1161 (9th Cir.1998) (per curiam) (refusing to consider a remand order final for purposes of appeal because "appellate review would not be foreclosed to any party if an immediate appeal were not allowed"). The Remand Order, as a practical matter, may have left the Service without an avenue for review. This alone, however, does not entitle the Council to appeal. See Smoke v. Norton, 252 F.3d 468, 472 n. 1 (D.C.Cir.2001) (Henderson, J., concurring) (acknowledging that "[t]he agency's right to appeal such an order is based on the fact that if it were limited to an appeal only after remand proceedings, it would lose the opportunity to appeal in the event the decision to remand was in error," but stating that the appellant-intervenors "do not succeed to the agency's right to appeal which is unique to itself"). Indeed, no aspect of the district court's ruling vitiates the Council's access to appellate review of the eventual outcome of the district court's decision.
 
 
 9
 Before the proceedings even reach the appeal stage, it is possible that the action taken by the Service on remand will provide the Council with all the relief it seeks. The district court has walled off a single option: if one Service rule includes hatchery Oregon coastal salmon in the same DPS as the wild variety, a second cannot exclude hatchery fish from the wild salmon's "threatened" listing. Permutations favorable to the Council remain. In theory, for example, the Service could define hatchery coho as a separate DPS from naturally spawned coho under the Service's current ESA standards (although the district court legitimately doubts this is possible), and a listing that includes only naturally spawned coho would no longer offend the district court's holding. A more plausible route to the same natural-only listing would be to have the Service reformulate its criteria for determining which groups of salmon constitute DPSs. In addition, nothing prevents the Service from forging an entirely new set of rules from scratch. In any event, the Council will likely enjoy the opportunity to influence the ultimate shape of the Service rule during the public participation phase of the rulemaking process the Service intends to undertake. See Endangered and Threatened Species: Findings on Petitions to Delist Pacific Salmonid ESUs, 67 Fed.Reg. at 6215 (summarizing steps the Service anticipates taking to revise its ESA policies affecting West Coast salmon populations).
 
 
 10
 If the Council perceives the resulting rule (or lack thereof) to be unlawful and adverse to its interests, it can bring suit at that point to challenge the Service's action. If dissatisfied with the district court's determination, the Council would then be able to appeal to this court. Until all these contingencies have played out, however, any decision by us could prove entirely unnecessary. The matter is not "final," therefore, for purposes of appellate review.
 
 
 11
 The Council tries to parse the district court's order, arguing that setting aside the Service coho listing is a separately appealable district court decision, distinct from declaring the listing unlawful. Review of the listing's invalidation, the Council continues, would effectively be denied by the immediate harm that could befall wild Oregon coast coho salmon once stripped of the protections of an ESA listing. But are these "two" decisions not one and the same for purposes of appeal?
 
 
 12
 Although not without exception, vacatur of an unlawful agency rule normally accompanies a remand. See, e.g., Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir.1995) ("Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid."); Fertilizer Inst. v. EPA, 935 F.2d 1303, 1312 (D.C.Cir.1991) ("Ordinarily, when a regulation is not promulgated in compliance with the APA, the regulation cannot be `afforded the force and effect of law.'" (quoting Chrysler Corp. v. Brown, 441 U.S. 281, 313, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (internal quotations omitted))); see also W. Oil & Gas Ass'n v. EPA, 633 F.2d 803, 813 (9th Cir.1980) (describing the circumstances under which the court left an agency determination in place as "unusual"). The Council cites several cases where appellate courts kept regulations intact while simultaneously ordering remands, but none involved the posture before us. The cited cases all entailed remand orders issued in the first instance by the appellate court; preexisting remand orders were not part of the dispositions being reviewed. See, e.g., Idaho Farm Bureau Fed'n, 58 F.3d at 1405-06 (vacating the district court's decision to set an endangered listing aside and ordering a remand to the Fish and Wildlife Service instead); W. Oil & Gas Ass'n, 633 F.2d at 806-07 (reviewing EPA Clean Air Act determinations that were not subject to district court consideration). We accordingly conclude that we lack jurisdiction over the entire Remand Order, including its provision setting aside the Service's ESA listing.
 
 III.
 
 13
 The Council likewise cannot avail itself of the argument that the Remand Order has the "practical effect" of granting an injunction and therefore is subject to an interlocutory appeal under 28 U.S.C. § 1292(a)(1). See 28 U.S.C. § 1292(a)(1) (providing jurisdiction over appeals from, inter alia, "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions"); Plata v. Davis, 329 F.3d 1101, 1106 (9th Cir.2003) ("[A] line of cases beginning with Carson v. Am. Brands, Inc., [450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)], ... permit[s] appellate jurisdiction over orders that have the `practical effect' of granting, denying, or modifying injunctive relief." (quoting Carson, 450 U.S. at 83, 101 S.Ct. 993)). To fit within Carson's framework and thus be appealable under section 1292(a)(1), the district court's "ruling must (1) have the practical effect of entering an injunction, (2) have serious, perhaps irreparable, consequences, and (3) be such that an immediate appeal is the only effective way to challenge it." Calderon v. United States Dist. Court for the Cent. Dist. of Cal., 137 F.3d 1420, 1422 n. 2 (9th Cir.1998).
 
 
 14
 The district court's summary judgment "declar[ing the Service's ESA listing] unlawful and set[ting it] aside as arbitrary and capricious," Alsea Valley Alliance, 161 F.Supp.2d at 1163-64, does not clear Carson's first hurdle. The order does not compel the Service to remove Oregon coast coho salmon from the threatened species list or take any other actions. Indeed, the only aspect of the summary judgment that remotely resembles injunctive relief is that it prohibits, as a practical matter, the enforcement of the Service's listing decision as is. It would be far too tenuous, however, to maintain that this is the practical equivalent of "enjoining" the Service. Taken to its logical end, such reasoning would classify as "injunctive" all declaratory relief that deems an agency rule unlawful. Moreover, branding such declarations "injunctions" would be contrary to an important principle that runs throughout our decisions: "[b]ecause § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, [the Court has] construed the statute narrowly." Orange County v. Hongkong & Shanghai Banking Corp., 52 F.3d 821, 825 (9th Cir.1995) (brackets in original), quoting Carson, 450 U.S. at 84, 101 S.Ct. 993. Thus, the Remand Order does not have the "practical effect" of an injunction for purposes of subsection 1292(a)(1).
 
 IV.
 
 15
 We have held that an "order permitting intervention [is] not a final order. It [is] purely interlocutory, and is not among those interlocutory orders which are made appealable by statute." Kris Petroleum Ltd. v. Stoddard, 221 F.2d 801, 802 (9th Cir.1955) (per curiam); see also Van Hoomissen v. Xerox Corp., 497 F.2d 180, 181 (9th Cir.1974) ("An order permitting intervention is not a final order and is not appealable."). Thus, we review the Intervention Order "only upon appeal from the final judgment." Kris Petroleum, 221 F.2d at 802. Our conclusion that a final judgment has not been rendered in this case therefore dictates that we dismiss Alsea's appeal from the Intervention Order.
 
 
 16
 APPEALS DISMISSED. STAY PENDING APPEAL DISSOLVED.
 
 
 
 Notes:
 
 
 *
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation