**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEPENDABLE HIGHWAY EXPRESS,
INC.,
*Plaintiff-Appellant,*

v.

NAVIGATORS INS. CO.,
*Defendant-Appellee.*

No. 05-56346

D.C. No.
CV-05-01208-NM

Appeal from the United States District Court
for the Central District of California
Nora M. Manella, District Judge, Presiding

DEPENDABLE HIGHWAY EXPRESS,
INC.,
*Petitioner,*

v.

UNITED STATES DISTRICT
COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA,
*Respondent,*

NAVIGATORS INS. CO.,
*Real Party in Interest.*

No. 05-75033

D.C. No.
CV-05-01208-
NM(PLAx)

OPINION

Petition for Writ of Mandamus

Argued and Submitted
March 6, 2007—Pasadena, California

Filed August 22, 2007

10271

Before: Stephen Reinhardt and Richard C. Tallman,
Circuit Judges, and Claudia Wilken,* District Judge.

Opinion by Judge Tallman

*The Honorable Claudia Wilken, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

David E.R. Woolley, Los Angeles, California, for the plaintiff-appellant.

Arthur A. Leonard, Santa Monica, California, for the defendant-appellee.

## OPINION

TALLMAN, Circuit Judge:

In this diversity action, Dependable Highway Express, Inc. ("Dependable") appeals from a district court order staying Dependable's domestic contract dispute against Navigators Insurance Company ("Navigators") pending resolution of arbitration proceedings in England. We hold that the district court abused its discretion, and we remand for further proceedings.

I

Dependable, a California company, operates a warehouse in Los Angeles and a fleet of trucks to service warehouse customers. Navigators, a New York insurance company, issued indemnity insurance to Dependable for the period of November 1999 to October 2001. As the result of two cargo thefts in 1999 and 2001, Dependable incurred expenses totaling approximately $245,000 (for third-party payments to the aggrieved customers, as well as claims defense costs), which it submitted to Navigators for indemnification. When Navigators refused to reimburse Dependable, Dependable filed a complaint in California superior court on January 8, 2005, alleging breach of the insurance contract.

Shortly thereafter, Navigators commenced proceedings in the High Court of Justice, Queen's Bench Division, Commercial Court, in London, England. Navigators sought a restraining order against Dependable to forbid Dependable from proceeding with litigation in the United States. Navigators asserted that Dependable's insurance policy was subject to the general terms and standard conditions of its "Columbus Wording" document, which designated English arbitration as the means for resolving disputes between the parties.[1] After hearing ex parte testimony from Navigators' English lawyer on two occasions, the English court granted an injunction and assessed court fees of roughly $23,000 against Dependable on March 11, 2005. Despite Navigators' attempts to notify Dependable of the English proceedings, Dependable never appeared in England.

Around the same time, Navigators removed the California state case to federal court and answered Dependable's complaint. As an affirmative defense, Navigators raised the

---

[1]Apparently, Navigators and Dependable never directly negotiated the terms of insurance coverage. Instead, Navigators asserts that Dependable's insurance broker procured coverage on Dependable's behalf.

English arbitration provision found in its Columbus Wording document. In response, Dependable filed a motion for summary judgment, which the district court "vacated," reasoning that a motion for summary judgment was improper before discovery.

On May 20, 2005, Navigators filed a motion to dismiss or stay the federal action in light of the English proceedings. Dependable opposed Navigators' motion, claiming that the Columbus Wording (and specifically the arbitration provisions) were not part of Dependable's insurance policy because the schedules summarizing the policy's key terms referred only to "Transport Wording." Thus, in Dependable's view, the difference between the words "Transport" and "Columbus" established that the English arbitration provision was not part of its insurance policy.[2] The district court granted Navigators' motion for a stay in a brief minute order that acknowledged the English court's injunction and stayed the federal proceedings "pending the resolution of the London proceedings, including arbitration." This timely appeal followed.

## II

Before considering the merits, we must first decide whether we have jurisdiction under 28 U.S.C. § 1291 to review the district court's stay. Generally, interlocutory orders are not immediately appealable. *See* 28 U.S.C. § 1291 (restricting appellate jurisdiction to "final decisions"). However, in certain cases, an interlocutory order may be deemed "final" for jurisdictional purposes. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1101-04 (9th Cir. 2005). We hold that we have

---

[2]Dependable's position is somewhat puzzling because it claims never to have received a copy of the Transport Wording. Thus, Dependable concedes that it entered into a contract, the general terms and conditions of which it has never actually seen. The parties did not include the original contract documents in the excerpts of record, making it difficult for us to evaluate the argument. We leave to the district court on remand the resolution of that dispute.

jurisdiction under § 1291 because the stay order puts Dependable "effectively out of court" under *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 9 (1983), and *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962), and because the stay is an appealable collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).[3]

## A

[1] In *Moses H. Cone*, a federal district court issued a stay so that the parties could resolve an arbitrability issue raised in a concurrent state court action. 460 U.S. at 7. Relying on its

[3]The parties' jurisdictional statements miss the mark. Dependable asserts that the district court's stay was an example of *Colorado River* abstention. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (holding that in exceptional circumstances a district court may dismiss a federal action in light of parallel state court proceedings and base its decision purely on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" (internal quotation marks omitted) (alteration in original)). However, Dependable points to no case in which a district court invoked *Colorado River* where the parallel proceedings were commenced in a foreign tribunal, as opposed to state court. Furthermore, the district court's minute order in this case does not cite *Colorado River*. Presumably, if the district court had wished to invoke this doctrine—which by its very holding is available only in rare circumstances—the order would have cited to it. While interlocutory orders based on *Colorado River* abstention are appealable, *see Holder v. Holder*, 305 F.3d 854, 863 (9th Cir. 2002), there is no basis for concluding that such a stay was intended in the district court's decision.

For its part, Navigators construes the district court's stay as an appealable exercise of international comity. *See JP Morgan Chase Bank v. Altos Hornos de Mexico*, 412 F.3d 418, 422 (2nd Cir. 2005) ("Declining to decide a question of law on the basis of international comity is a form of abstention . . . ."). Once again, the order does not address the comity doctrine or cite any case invoking it. In the alternative, Navigators argues that, under the Federal Arbitration Act ("FAA"), stays pending arbitration are unappealable. 9 U.S.C. §§ 3, 4, 16(b)(1)-(2). There is no indication, however, that the court entered the stay pursuant to the FAA.

earlier decision in *Idlewild*, the Supreme Court concluded that the stay was appealable because there would be "no further litigation in the federal forum" and the state's decision would be res judicata, leaving the defendant "effectively out of court." *Moses H. Cone*, 460 U.S. at 10. In *Idlewild*, a federal district court stayed an action seeking to invalidate a New York law to allow the state court the opportunity to address the plaintiff's various claims. 370 U.S. at 714. Notably, the Court held that the stay was appealable despite the fact that the state court decision might *not* moot the federal proceedings. *Id.* at 714, 715 n.2 (holding that Idlewild was "effectively out of court" where the district court's stay allowed the state court to address issues that would not necessarily dispose of the case); *see also Lockyer*, 398 F.3d at 1102 ("Even . . . where the case might well come back to federal district court, Idlewild Liquor was 'effectively out of court' for purposes of appealability of the stay order.").

   **[2]** The stay in this case presents a strong likelihood that the English proceedings will leave one of the parties "effectively out of court." If the English arbitrators decide in Navigators' favor, Dependable will have little recourse back in the United States district court. *See Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992) ("The district court's . . . review of a foreign arbitration award is quite circumscribed."); *id.* (noting that the party challenging a foreign award bears a substantial burden because "public policy in favor of international arbitration is strong" (internal quotation marks omitted)).[4] On the other hand, were Dependable to prevail in England, its domestic suit would be mooted, "just as Idlewild's federal constitutional claims in the district court would have been mooted if

---

[4]To the extent that the FAA allows a district court to refuse to enforce a foreign award, thus rendering the foreign decision somewhat less binding than an analogous state court decision, the *Idlewild* Court established that the possibility of further review by the district court is not a bar to appealability. *See* 370 U.S. at 714, 715 n.2; *Lockyer*, 398 F.3d at 1102.

the New York state courts had granted relief on state-law grounds." *Lockyer*, 398 F.3d at 1102 (citing *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219-21 (3d Cir. 1989) (concluding that the possibility that a stay would render a claim moot was equivalent to res judicata for purposes of applying *Moses H. Cone*)). Similarly, if the district court were to enforce the English court's injunction against Dependable proceeding domestically, Dependable once again would be "effectively out of court."

**[3]** Although the mooting of Dependable's federal suit is not a foregone conclusion, the stay order provides no indication that the district court "*clearly* [anticipated] and intend[ed] that proceedings [would] resume after the stay has expired." *Lockyer*, 398 F.3d at 1103 (emphasis added); *see also Cofab, Inc. v. Phila. Joint Bd.*, 141 F.3d 105, 109 (3d Cir. 1998) (holding that *Moses H. Cone* does not apply where district court had no intention to " 'deep six' the suit"). Indeed, the stay order contains no detail as to what might occur back in the United States once English arbitration concluded. As a result, analysis under *Moses H. Cone* and *Idlewild* confirms that the stay in this case puts Dependable "effectively out of court," and we have appellate jurisdiction to determine the propriety of the stay—regardless of whether the foreign proceedings actually moot the domestic litigation. *See Lockyer*, 398 F.3d at 1102 (noting that "absolute certainty is not required in order to put a party 'effectively out of court' within the meaning of the *Moses H. Cone* doctrine").

B

**[4]** Even if the stay did not constitute a final order under *Moses H. Cone*, appellate jurisdiction is established under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). In *Cohen*, the Supreme Court concluded that under certain conditions a small class of collateral orders of the district court is immediately appealable. To fall within *Cohen*'s ambit, an order "must [1] conclusively determine the disputed

question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (internal quotation marks omitted).

[5] Following the Supreme Court's lead in *Moses H. Cone*, the *Lockyer* court buttressed its jurisdictional holding with an alternative analysis under *Cohen*. 398 F.3d at 1103-04. The court held that the first *Cohen* criterion was satisfied "because, even though the stay order could theoretically be modified, the district court did not impose a time limit on the stay or note circumstances that might result in its modification." *Id.* at 1103 (citing *Moses H. Cone*, 460 U.S. at 13 ("[There is] no basis to suppose that the District Judge contemplated any reconsideration of his decision to defer to the parallel [proceedings]."); *Burns v. Walter*, 931 F.2d 140, 144 (1st Cir. 1991) (noting that there was "no indication in the record" that the district court would take further action)). *Cohen*'s first criterion is met here. As in *Lockyer*, the district court did not impose a time limit or indicate that it might consider modifying the order.

[6] *Cohen*'s second criterion is also met. In applying *Cohen*, the *Moses H. Cone* Court held that "[a]n order that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits." 460 U.S. at 12. Similarly, the district court order staying the federal action in light of the English proceedings was a refusal to address the merits of Dependable's breach of contract claims and related challenges to the arbitration clause found in Navigators' Columbus Wording.

[7] Finally, the stay satisfies *Cohen*'s third criterion because the "propriety of the stay will be unreviewable on appeal" regardless of whether the English proceedings moot the domestic litigation. *Lockyer*, 398 F.3d at 1104 (noting that even if the parallel proceedings do not moot the federal claim,

"the district court will lift the stay on its own and proceed with the suit," rendering review of the stay impossible). As in *Lockyer*, if the English proceedings do not put an end to the U.S. cause of action, the district court will lift the stay and eliminate its reviewability. We therefore conclude that the stay is reviewable under *Cohen* as a collateral order.[5]

### III

We review a district court's stay order for abuse of discretion. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir. 1993). However, the standard is "somewhat less deferential" than the abuse of discretion standard used in other contexts. *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000). A district court abuses its discretion if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

The district court's stay order is extremely terse. It consists of four paragraphs and contains citations to only two cases: *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936), and *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1997). The passages from *Landis* and *Leyva* in the stay order establish the general principle that a district court possesses the inherent power to control its docket and promote efficient use of judicial resources. *See Landis*, 299 U.S. at 254 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Leyva*, 593 F.2d at 863-64 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolu-

---

[5]Because jurisdiction is proper under *Moses H. Cone* or *Cohen*, if not both, Dependable's petition for a writ of mandamus is moot, and we must dismiss it.

tion of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

However, while it is the prerogative of the district court to manage its workload, case management standing alone is not necessarily a sufficient ground to stay proceedings. *See Lockyer*, 398 F.3d at 1112 (holding that a *Landis* stay was inappropriate where grounds other than judicial economy were offered and found to lack merit).

**[8]** Moreover, the district court overlooked certain restrictions on what otherwise might be an unfettered exercise of discretion. First, *Landis* cautions that "if there is even a fair possibility that the stay . . . will work damage to some one else," the stay may be inappropriate absent a showing by the moving party of "hardship or inequity." 299 U.S. at 255. In this case, there is more than a "fair possibility" that the stay will "work damage" to Dependable. Forcing the company to enter into arbitration in a foreign country when it remains unclear whether Dependable even agreed to arbitrate and where a foreign court has already levied legal and equitable penalties against it qualifies as a "fair possibility" of damage. Moreover, Navigators has failed to establish a sufficient case of hardship: as the *Lockyer* court noted, "being required to defend a suit [if the stay is vacated], does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." 398 F.3d at 1112.

In addition, the *Landis* Court reversed the lower court decision primarily because the stay would result in undue delay. 299 U.S. at 256; *id.* at 259 (remanding to consider whether to grant a stay of what was likely to be fairly short duration). In *Leyva*, the court expanded this reasoning, concluding that "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." 593

F.2d at 864. Generally, stays should not be indefinite in nature. *See Yong*, 208 F.3d at 1119 (requiring a strong showing to justify an indefinite stay). The order in this case provides no specific deadline for when the stay will terminate. In the nearly two years that have passed since the order issued, we have received no indication that any arbitration proceedings have commenced in England—let alone concluded.[6] *Cf. id.* (noting that a stay that terminated upon the resolution of an appeal could "remain in effect for a lengthy period of time, perhaps for years" if litigation dragged on). Thus, in light of the general policy favoring stays of short, or at least reasonable, duration, the district court erred by issuing a stay without any indication that it would last only for a reasonable time.

**[9]** Because the stay is likely to do damage to Dependable, and it is unclear when the stay might lift, if at all, the district court misapplied *Landis* and *Leyva*, committing an error of law which rendered the order an abuse of discretion. *See Lockyer*, 398 F.3d at 1112-13 (noting the reluctance with which the appellate court questions the district court's management of its docket but nevertheless concluding that a *Landis* stay was improper).

## IV

Having determined that the district court's stated grounds for issuing the stay were erroneous, we next consider whether the stay nevertheless should be upheld under principles of international comity, as urged by Navigators. *See Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1097 (9th Cir. 2003) ("[W]e are free to affirm the district court on any ground supported by the record and briefed by the parties, and we are not limited to reviewing the district court's stated basis for its decision."). We conclude that deferring to the English

---

[6]During oral argument, counsel for both parties acknowledged that London arbitration had yet to commence.

proceedings as an exercise of comity would be inappropriate on the inadequate record before us.

**[10]** Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). The term "summarizes in a brief word a complex and elusive concept—the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum." *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). Comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton*, 159 U.S. at 163-64. Indeed,

> there are limitations to the application of comity. When the foreign act is inherently inconsistent with the policies underlying comity, domestic recognition could tend either to legitimize the aberration or to encourage retaliation, undercutting the realization of the goals served by comity. No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum.

*Laker Airways*, 731 F.2d at 937.

**[11]** *Laker Airways*, a seminal case on anti-suit injunctions and international comity, involved an antitrust action initiated by Laker against several domestic and international air carriers. *Id.* at 917. In response to Laker's U.S. lawsuit, several of the foreign defendants sought an anti-suit injunction in British court as a means to bar further domestic action. *Id.* at 918. The British court granted the injunction, prompting Laker to seek its own anti-suit injunction in the United States. *Id.* The district court granted Laker's injunction barring further British proceedings, *id.*, and on interlocutory appeal the D.C. Circuit held, in part, that the U.S. court was not bound by

principles of international comity, *id.* at 915-16. The court noted that, "[w]hen the availability of an action in the domestic courts is necessary to a full and fair adjudication of the plaintiff's claims, a court should preserve the forum." *Id.* at 929. Moreover, domestic courts should be wary of enforcing foreign injunctions where the "clear thrust of the requested relief was the termination of the United States . . . claim." *Id.* at 930. The *Laker Airways* court further emphasized that Laker's suit "was first instituted in the United States," and thus the "initial opportunity to exercise comity . . . was put to the United Kingdom courts." *Id.* at 939. Because the defendants' "claims of comity now asserted in United States courts come burdened with the failure of the British to recognize comity," the district court did not err by refusing to extend comity to the later-filed British action. *Id.*

More recently, we addressed the comity doctrine in *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006), which involved a contract dispute between a California winery and its Ecuadorian distributor. *Id.* at 987. Following a series of disagreements concerning the parties' contract, Andina filed suit in Ecuador, alleging the violation of a decree that was issued by an Ecuadorian military dictatorship in 1976 and later repealed in 1997. *Id.* In response, Gallo filed suit in California pursuant to the contract's forum selection clause, seeking declaratory and injunctive relief, and damages. *Id.* at 988. After Andina removed the domestic action to federal court, the district court denied Gallo's request for a preliminary injunction restraining Andina's action in Ecuador and relying heavily on considerations of comity. *Id.*

On appeal, we held that the district court abused its discretion when it declined to grant a preliminary injunction. Highlighting the strong domestic policy favoring enforcement of forum selection clauses, and noting that neither party disputed the validity of the contract's clause naming California as the forum, we concluded that "[a]n anti-suit injunction is the only way Gallo can effectively enforce the forum selection clause."

*Id.* In doing so, we rejected the district court's application of the comity doctrine. Although the Ecuadorian action was filed first, the parties had "previously agreed to litigate their disputes" in California, and thus respecting the Ecuadorian proceedings would frustrate "United States policy favoring the enforcement of forum selection clauses." *Id.* at 994. We therefore declined to extend comity to a foreign action instituted solely in an effort to "evade the enforcement of an otherwise-valid forum selection clause." *Id.*

**[12]** In light of the principles applied in *Laker Airways* and *E. & J. Gallo*, we conclude that invoking the international comity doctrine would be inappropriate on the inadequate record before us. Dependable filed suit in a U.S. forum before Navigators brought its anti-suit injunction action in the English court. The English court thus had the "initial opportunity to exercise comity," *Laker Airways*, 731 F.2d at 939, but elected not to. Moreover, the clear thrust of Navigators' English action was to halt Dependable's domestic proceedings—a tactic frowned upon in *Laker Airways*. *Cf. id.* at 938 ("[B]y any definition the injunctions of the United Kingdom courts are not entitled to comity. This is because the action before the United Kingdom courts is specifically intended to interfere with and terminate Laker's United States antitrust suit . . . . [T]he English injunction seeks only to quash the practical power of the United States Courts to adjudicate claims under United States law . . . ."). Indeed, the express purpose of an anti-suit injunction, be it offensive or defensive, is to block litigation in a separate forum. Comity is not required where the British action was filed after the U.S. action for the sole purpose of interfering with the U.S. suit.

**[13]** To be sure, Navigators' actions are far less egregious than those of the defendants in *Laker Airways* and *E. & J. Gallo*. *See Laker Airways*, 731 F.2d at 932, 940 (characterizing defendants' conduct as "offensive" and the related actions of the British government as "arrogant"); *E. & J. Gallo*, 446

F.3d at 995 ("Andina has involved Gallo in messy, protracted, and potentially fraudulent litigation in Ecuador in direct contravention of a valid and enforceable forum selection clause."); *see also id.* (delaying issuance of the mandate to consider whether to impose sanctions pursuant to the court's inherent authority). The record now before us contains no evidence that Navigators has acted in bad faith or sought deliberately to circumvent the terms of the agreement with Dependable (whatever the district court may find them to be on remand). On the contrary, Navigators claims it has acted in accordance with the terms of a forum selection clause that it believed to have been part of the insurance contract. Despite Navigators' purportedly good intentions, however, the practical effect of its action in English court was to interfere with the domestic forum's ability to adjudicate the dispute.

**[14]** If the record were clear that the parties agreed to foreign arbitration, or if the district court made such a determination, we would have little trouble upholding the stay on grounds of international comity. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (concluding that "international comity . . . and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require [enforcement of a foreign arbitration clause], even assuming that a contrary result would be forthcoming in a domestic context"). The English court would not have been bound by principles of comity in the first instance, and the district court's stay would have simply recognized the validity of the parties' forum selection clause. *See E. & J. Gallo*, 446 F.3d at 994 ("[W]here private parties have previously agreed to litigate their disputes in a certain forum, one party's filing first in a different forum would not implicate comity at all [in the second forum]."). Central to the dispute before us, however, is the parties' disagreement over the very existence of arbitration and forum selection clauses designating London as the site of the arbitration and English law as the sole means of settling insurance coverage disputes. *Cf. id.* (noting that "the contract clearly

contains a California choice-of-law clause"). Where, as here, the record does not even contain a copy of the original insurance contract, it would be improper to invoke international comity based on the mere possibility of upholding a disputed forum selection or arbitration clause.

**[15]** In sum, because the district court never addressed the parties' dispute over the substance of the contract—specifically, the contested arbitration clause—we decline Navigators' invitation to defer to the English anti-suit injunction obtained in Dependable's absence. *See Laker Airways*, 731 F.2d at 934 (noting that a forum with jurisdiction over a particular dispute is not obligated to "stay its own proceedings in response to an anti-suit injunction").

V

We hold that the district court's indefinite *Landis* stay was an abuse of discretion. Furthermore, upholding the stay under the doctrine of international comity would be inappropriate at this stage based on the limited record before us. We remand so the district court can develop the record in order to determine whether Dependable and Navigators agreed to arbitrate disputes arising from the insurance contract. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006) (en banc) (reiterating that a district court is obligated to answer threshold issues of arbitrability). We leave to the district court's determination the scope of any necessary discovery and whether the arbitrability issue can be resolved on summary judgment. If there are contested issues of material fact on that issue, the district court might consider conducting a bifurcated trial and proceed to the merits only if the fact-finder determines that there is no arbitration clause in the contract. Conversely, if the evidence shows the existence of the arbitration clause, the district court is free to issue another stay as warranted under principles of international comity or the Federal Arbitration Act, 9 U.S.C. §§ 3-4.

The stay order in No. 05-56346 is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. The petition for a writ of mandamus in No. 05-75033 is **DISMISSED** as moot. The parties shall bear their own costs.