**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIDA F. NEGRETE, as Conservator
for EVERETT E. OW, an individual
and on behalf of all other similarly
situated persons,
              *Plaintiff-Appellee,*

              v.

ALLIANZ LIFE INSURANCE
COMPANY OF NORTH AMERICA, a
Minnesota corporation,
              *Defendant-Appellant.*

No. 07-55505

D.C. No.
CV-05-06838-CAS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
April 8, 2008—Pasadena, California

Filed April 29, 2008

Before: Harry Pregerson, Dorothy W. Nelson, and
Ferdinand F. Fernandez, Circuit Judges.

Opinion by Judge Fernandez

## COUNSEL

Thomas J. Nolan, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California; Sonia Escobio O'Donnell, Jorden Burt, LLP, Miami, Florida, for the defendant-appellant.

Francis J. Balint, Jr., Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, Arizona, for the plaintiff-appellee.

## OPINION

FERNANDEZ, Circuit Judge:

Vida F. Negrete filed this class action lawsuit against Allianz Life Insurance Company of North America. Allianz appeals a district court order that effectively prevents it from proceeding with any settlement negotiations on similar class action claims raised in any federal or state court without first obtaining permission from Negrete's Co-Lead Counsel,[1] and from finalizing a settlement in any other court "that resolves, in whole or in part, the claims brought in [the Negrete] action," without first obtaining the district court's approval. We reverse.

## BACKGROUND

On September 21, 2005, Vida F. Negrete filed a class

---

[1] Co-Lead Counsel are Bonnett, Fairbourn, Friedman & Balint, PC, and Coughlin, Stoia, Geller, Rudman & Robbins, LLP. Hereafter, they will be referred to collectively as Negrete Counsel.

action lawsuit against Allianz, an insurance corporation, in which she challenged the sale of Allianz's fixed deferred annuities. Negrete, acting as conservator for Everett E. Ow, alleges that Ow was "sold an unsuitable financial product" because the maturity date exceeded his life expectancy and restricted his access to principal without surrender charges. The complaint asserted claims for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, and violation of California statutes.[2]

In November 2006, the district court certified a nationwide class on the RICO claims only and a California-purchaser-only class as to the California statutory claims. The district court's certification order on the RICO claims covered all Allianz's deferred annuities purchased by individuals aged 65 or older within the applicable statutes of limitations.[3] This was not the only action against Allianz regarding its sales of annuities; several similar cases have been filed in various federal and state courts.

*Iorio v. Asset Marketing Inc.*, No. 05-CV-00633 (S.D. Cal.) was filed in March 2005, in the United States District Court, Southern District of California, on behalf of a California class which purchased certain "bonus" annuity products. In July 2006, the district court in *Iorio* issued an order certifying a plaintiff's class. That class partially overlaps the *Negrete* class.

---

[2]A very similar case, *Healey v. Allianz Life Insurance Co. of North America*, Case No. CV-058908, was filed in the same district court shortly after *Negrete* and similar orders were issued in both cases. However, only the order in *Negrete* is before us at this time.

[3]In certifying the class, the district court carved out the nationwide class certified in *Castello v. Allianz Life Insurance Co. of North America*, MC03-20405 (Minn. Dist. Ct.), hereafter described in more detail.

*Mooney v. Allianz Life Insurance Co. of North America*, No. 06-CV-00545 was filed on February 9, 2006, in the United States District Court, District of Minnesota. Plaintiffs in that case sought to represent a nationwide class asserting claims under Minnesota's Prevention of Consumer Fraud Act and unjust enrichment. On May 10, 2007, the court certified a nationwide class of all purchasers of "bonus" annuities. Negrete contends that many of the annuity transactions at issue in *Mooney* overlap those in *Negrete*.

*Castello v. Allianz Life Insurance Co. of North America*, Civ. No. MC03-20405 (Minn. Dist. Ct.) is a certified nationwide class action that was filed on December 22, 2003, in the Fourth Judicial District Court, State of Minnesota. The *Castello* class is comprised of individuals who purchased Allianz's "cash bonus" annuities.

Finally, on January 7, 2007, the Minnesota Attorney General filed an action, *State of Minnesota v. Allianz Life Insurance Co. of North America*, Civ. No. 07-581 (Minn. Dist. Ct.), in the Fourth Judicial District Court, State of Minnesota (*The AG Action*). *The AG Action* seeks relief under Minnesota law on behalf of Minnesota residents who purchased Allianz's fixed deferred annuity products. That class may also partially overlap the *Negrete* class.

On February 28, 2007, the parties in *Castello* participated in a hearing in which the court asked the parties to address settlement issues. Allianz indicated that it would be willing to engage in mediation discussions only if the discussions included possible settlement of *Mooney* and *The AG Action*. The parties in *Castello*, *The AG Action* and *Mooney* were amenable to that settlement plan, and on March 13, 2007, they met with a mediator to commence settlement discussions. Negrete Counsel was neither informed of nor included in that mediation session, but learned of the proceedings from a third party. Believing that settlement negotiations in *Mooney* could "possibly extend to and extinguish the claims of the class in

Negrete," and that Allianz might be engaged in a collusive reverse auction, Negrete Counsel contacted Allianz and requested assurances that:

> any settlement negotiations or mediation in the referenced cases will not address any of the claims or damages asserted on behalf of the *Negrete* class, that any proposed settlement reached as a result of those negotiations will not compromise, impair, prejudice or affect the claims of the *Negrete* class members, and that any proposed settlement class will expressly exclude all members of the *Negrete* class.

Allianz declined to provide those assurances. Negrete then commenced the proceedings that led to this appeal. She sought an ex parte order prohibiting Allianz from:

> settling, attempting to settle, negotiating, compromising, or releasing any claims, causes of action, or damages relating to any Allianz deferred annuity purchased by any Class Member in the *Negrete/ Healey* matter during the relevant Class Period, in any other forum, including but not limited to, the *Mooney* matter, without the express approval of this Court and participation of Court appointed Co-Lead Counsel in the *Negrete/Healey* matter.

Allianz opposed the ex parte application.

On March 19, 2007, the district court, without holding a hearing, issued an order nominally denying the application because it was "not authorized by the All Writs Act." However, the court went on to order:

> Any discussions of a settlement that would affect any claims brought in this litigation, other than claims of an individual plaintiff or class member, must be conducted or authorized by plaintiffs' Co-

> Lead Counsel. Any proposed settlement that resolves, in whole or in part, the claims brought in this action shall first be subject to review and approval by the Court in this litigation.

Allianz appealed that order on April 18, 2007.

At a September 10, 2007, status conference, the district court ordered Negrete and Allianz to commence mediation. The court also indicated that it did not then intend to enforce the March 19 order as to the other federal cases because it would be inappropriate to interfere with the dockets of the other judges. The court also suggested that it might be inclined to rescind the order, but it did not do so. Later on, during a September 24, 2007, status conference, the district court stated that it had conferred with the judges presiding over the *Mooney* and *Iorio* cases and it "expressed clearly to both of them that [the court] did not intend for any order that [it] entered to any way impede their ability to go forward and set settlement conferences." Again, the court did not lift its own order or even state that Negrete Counsel were not to play a part in those other proceedings. Subsequently, on October 29, 2007, the district court reaffirmed that it was "not going to seek to enforce an order to prevent [Allianz] from attempting to settle" the other district court cases. Again, it did not rescind its own order. Finally, on November 27, 2007, the district court indicated that mediation was proceeding in *Mooney*; it did not, however, mention its own order at that point.

Allianz, which is still bound by the district court's order, has continued with this appeal.

## STANDARDS OF REVIEW

We review a district court order granting an injunction pursuant to the All Writs Act for an abuse of discretion. *Brother Records, Inc. v. Jardine*, 432 F.3d 939, 942 (9th Cir. 2005). A district court abuses its discretion in issuing a preliminary

injunction if its decision is based on either an erroneous legal standard or clearly erroneous factual findings, or if the injunction is overbroad. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). "A district court's decision is based on an erroneous legal standard if: '(1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation.' " *Id.*

"Whether an injunction may issue under the Anti-Injunction Act is a question of law reviewed de novo." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1106 (9th Cir. 2003). "However, the decision to issue an injunction that comes within an exception to the [Anti-Injunction] Act is reviewed for an abuse of discretion." *California v. Randtron*, 284 F.3d 969, 974 (9th Cir. 2002).

"[C]hallenges to an injunction . . . pursuant to Fed. R. Civ. P. 65(d) are reviewed *de novo*." *Premier Commc'ns Network, Inc. v. Fuentes*, 880 F.2d 1096, 1100 (9th Cir. 1989).

## JURISDICTION

At the threshold, we are met with Negrete's claim that we lack jurisdiction over the district court's order because it was not an injunction and because, even if it was, the issue is now moot. We disagree.

We recognize that, in general, our jurisdiction extends only to final district court decisions. *See* 28 U.S.C. § 1291; *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1063 (9th Cir. 2007); *Alsea Valley Alliance v. Dep't of Commerce*, 358 F.3d 1181, 1184 (9th Cir. 2004). Nevertheless, a major exception to that rule is for "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1); *see also Plata v. Davis*, 329 F.3d 1101, 1106 (9th Cir. 2003).

That may not seem to dispose of Negrete's challenge because the district court did not denominate its order as an injunction[4] and even denied Negrete's request for a temporary restraining order. But looks can be deceiving. We cannot content ourselves with the surface, but must expiscate further.

[1] Simply put, we are not bound by what a district court chooses to call an order, or even by a failure to give an order a particular name. We, instead, " 'look to [the order's] substantial effect rather than its terminology.' " *Orange County, Cal. Airport Hotel Assocs. v. H.K. & Shanghai Banking Corp. Ltd.*, 52 F.3d 821, 825 (9th Cir. 1995). That does not mean that we take an expansive view of 28 U.S.C. § 1292(a)(1). *Id.* It does mean, however, that in deciding whether an appeal is proper, we will ask: "(1) does the order have the practical effect of the grant or denial of an injunction; (2) does the order have serious, perhaps irreparable consequences; and (3) is the order one that can be effectively challenged only by immediate appeal?" *Thompson v. Enomoto*, 815 F.2d 1323, 1326-27 (9th Cir. 1987); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83-84, 101 S. Ct. 993, 996-97, 67 L. Ed. 2d 59 (1981); *Plata*, 329 F.3d at 1106. Reviewing the order at hand, we must answer all of those questions in the affirmative.

[2] The order enjoins Allianz from even discussing settlements in other cases that could affect any claims in this litigation, without obtaining the permission of its opponent in this litigation or allowing its opponent to actually conduct the dis-

---

[4]In fact, the district court did not even follow the provisions of the federal rules regarding injunctive orders. *See* Fed. R. Civ. P. 52(a)(2), 65(d); *Fed. Trade Comm'n v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1216 (9th Cir. 2004); *Fed. Election Comm'n v. Furgatch*, 869 F.2d 1256, 1262 (9th Cir. 1989). Allianz assigns that as another reason to reverse. However, as demonstrated in this opinion, we can fully understand the facts and the law in this instance without more formal findings and conclusions, and, therefore, we need not remand for further explication of those by the district court. *See LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1155 (9th Cir. 2006).

cussions; it further precludes any proposed settlement of other cases without the approval of this district court. In practical effect, it was an injunction.[5] The consequences of the order are serious to say the least — none of the other cases in which Allianz is, or may be, involved can be settled by or in the other courts in which they are located absent permission of Negrete Counsel and the court in this case. And, of course, the order can only be challenged by immediate appeal because if Allianz awaits the final determination of this case, the damage to prompt proceedings in other cases will have already been done. A decision by us months or years after that cannot repair the damage.

Nor does Negrete's attempt to characterize the order as nothing more than a scheduling order change our analysis. That is just another inventive label with no real substance. The order does not set forth a mere pretrial procedure,[6] or merely prescribe the conduct of the parties while they await trial.[7] As already explained, the order effectively precludes Allianz from proceeding in other actions brought against it in other courts. In fact, the district court recognized as much when it declared that it did not presently intend to enforce the order as to certain other federal actions because it did not wish to interfere with the other judges' handling of the progress of those actions at that time.

Negrete seizes on those statements by the district court in suggesting a final reason that we lack jurisdiction — moot-

---

[5]The order was directed at a party — Allianz. It was, clearly, enforceable by contempt. And, it was designed to protect the relief sought by Negrete by assuring that no other settlement in any other case could affect that relief. *See Orange County*, 52 F.3d at 825.

[6]*See Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25, 87 S. Ct. 193, 195, 17 L. Ed. 2d 23 (1966) (denial of summary judgment order).

[7]*See Abernathy v. S. Cal. Edison*, 885 F.2d 525, 528 (9th Cir. 1989) (arbitration order).

ness. We recognize that an issue becomes moot when no controversy remains,[8] or where the parties have no real interest in the outcome as far as the law is concerned.[9] But that surely does not decide this case. This is not even a case where an order has been withdrawn so that it has no continuing effect but the parties are still contending over whether it could be, or would be, reimposed at a later time. *See, e.g.*, *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221-22, 120 S. Ct. 722, 725, 145 L. Ed. 2d 650 (2000) (per curiam); *Deakins v. Monaghan*, 484 U.S. 193, 199-200, 108 S. Ct. 523, 528, 98 L. Ed. 2d 529 (1988).

**[3]** Here, the district court has never withdrawn its order, even though it recognized withdrawal as a possibility and even though Allianz asked it do so. Rather, the court has merely indicated that it will not now enforce the order regarding certain other federal cases because those courts have indicated that they wish to proceed and the district court is not inclined to interfere with them. We see no basis for determining that the controversy is over, that Allianz is not still affected, or that no effective relief will be granted if we reverse the district court's decision. Again, the mere fact that the district court has not seen fit to withdraw the order itself indicates that it still considers the order to be viable and enforceable against Allianz.

**[4]** Therefore, we have jurisdiction over this appeal.

DISCUSSION

Allianz argues that the injunction in question was not proper under the All Writs Act,[10] and, even if it was, it was

---

[8]*See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S. Ct. 1055, 1068, 137 L. Ed. 2d 170 (1997).

[9]*See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S. Ct. 1382, 1390, 146 L. Ed. 2d 265 (2000).

[10]28 U.S.C. § 1651.

barred by the Anti-Injunction Act[11] as far as state court proceedings are concerned. Both of those arguments depend on a determination that the injunction was directed against proceedings in other courts. Plainly it was.

Here, again, the mere form of the injunction does not describe its true reach. In form, it is directed to Allianz and Allianz's attorneys. In substance, it interferes with proceedings in other courts. As the Supreme Court stated in a case where a district court directed an injunction at a party but, in effect, stayed proceedings in a state court: "It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287, 90 S. Ct. 1739, 1743, 26 L. Ed. 2d 234 (1970). And, in response to an argument that the Anti-Injunction Act did not apply "because the district court order enjoins [a party] rather than the Tennessee proceeding itself" we replied that "[o]rdering the parties not to proceed is tantamount to enjoining the proceedings." *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002). The same is true here, and, while the cited cases apply to the Anti Injunction Act, the principle is perfectly general. It applies to the All Writs Act as well, for it is the restraint on other court proceedings that is problematic.

With that said, the specific issues can now be considered.

A. *The All Writs Act*

[5] The All Writs Act provides that: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). That is a broad, but not unlimited, grant of authority to federal courts, including the district court. As we

---

[11]28 U.S.C. § 2283.

have already noted, we review the district court's decision for an abuse of discretion. *See Brother Records, Inc.*, 432 F.3d at 942. We are constrained to find that there was abuse here.

**[6]** Much of what has been said in the Anti-Injunction Act area regarding state court cases, an area we discuss in part B of this opinion, applies here as well, and there is precious little authority dealing with injunctions directed by a district court to a court of equal dignity — another federal district court. A recent decision of the Third Circuit Court of Appeals says it all. There, a district court had enjoined proceedings in another district court. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 326-27 (3d Cir. 2007). The court of appeals commented on the fact that injunctions of that nature directed at another district court, as opposed to a state court, are not typical. *Id.* at 328. Indeed, they appear to be rarae aves; like us, the Third Circuit did not find any other appellate decisions on point.[12] It said:

> Indeed, the lack of cases in which the All Writs Act has been used to enjoin settlement efforts in another federal court is telling. It is clear that the Act is generally used to prohibit activities in another court that threaten to undermine a pending settlement in the enjoining court. When the Act has been used to *block* settlement efforts in another court, it is typically because a party was deliberately using that forum to circumvent a pending settlement agreement in the enjoining court.

*Id.* at 330 (citations omitted). The court then concluded:

> Based on the limited precedent in this area, there does not appear to be any basis for the injunction in this case. Although significant resources have been

---

[12]It did find one district court case. *See In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002).

invested in [this] litigation to this point, there is simply no support for the proposition that a court may enjoin parties from participating in or reaching a bona fide settlement in another federal court that may dispose of claims before it — particularly when there is no pending settlement in the enjoining court and the other federal court is . . . charged with attempting to reach a global settlement.

*Id.* at 331 (footnote omitted).

[7] We agree with that assessment and find that it has even more bite here. No settlement was directly in prospect in this case, and it could not, therefore, be said that a settlement was being circumvented or co-opted.[13] More than that, there were no facts before the district court that supported the notion that some kind of collusion was afoot. Negrete Counsel floated out the specter of a reverse auction, but brought forth no facts to give that eidolon more substance. A reverse auction is said to occur when "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002). It has an odor of mendacity about it. Even supposing that would be enough to justify an injunction of one district court by another one, there is no evidence of underhanded activity in this case. That being so, if Negrete's argument were accepted, the "reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions — none of the competing cases could settle without being accused by

---

[13]Incidentally, the mere fact that some other court might complete its proceedings before the district court was able to complete the proceedings in this case does not justify an injunction. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641-42, 97 S. Ct. 2881, 2893, 53 L. Ed. 2d 1009 (1977).

another of participating in a collusive reverse auction." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002) (internal quotation marks omitted).

[8] In short, the district court's order must be set aside. There simply was no proper support for the district court's enjoining of proceedings in other courts.

B.   *Anti-Injunction Act*

The district court's error in issuing the injunction was exacerbated by its reaching proceedings pending in the courts of Minnesota, and having the potential of reaching proceedings in other state courts, if any are filed. That caused a further clash of jurisdictions that must be resolved.

[9] The authority conferred upon federal courts by the All Writs Act is restricted by the Anti-Injunction Act, which is designed to preclude unseemly interference with state court proceedings. It declares that: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Therefore, unless one of the exceptions applies, the district court erred when it issued the injunction in question here.[14]

At the outset, it is important to note that the Anti-Injunction Act restriction is based upon considerations of federalism and speaks to a question of high public policy. It is not a minor revetment to be easily overcome; it is a fortress which may

---

[14]The phrase "proceedings in a State court" is, as the Supreme Court has said, "comprehensive. It includes all steps taken or which may be taken in the state court . . . ." *Hill v. Martin*, 296 U.S. 393, 403, 56 S. Ct. 278, 282-83, 80 L. Ed. 293 (1935). Particularly in this day and age, that includes settlement proceedings, mediation proceedings, and the like.

only be penetrated through the portals that Congress has made available.[15] As the Supreme Court has explained:

> On its face the present [Anti-Injunction] Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. The respondents here have intimated that the Act only establishes a "principle of comity," not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention. In 1955 when this Court interpreted this statute, it stated: "This is not a statute conveying a broad general policy for appropriate *ad hoc* application. Legislative policy is here expressed in a clear-cut prohibition qualified only by specifically defined exceptions." Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unim-

---

[15]There are a couple of narrow exceptions to this categorical statement, of course. *See Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 225-26, 77 S. Ct. 287, 290-91, 1 L. Ed. 2d 267 (1957); *see also Baines v. City of Danville*, 337 F.2d 579, 593-94 (4th Cir. 1964) (en banc), *aff'd*, *Baines v. City of Danville*, 384 U.S. 890, 86 S. Ct. 1915, 16 L. Ed. 2d 996 (1966) (per curiam). Neither applies here.

paired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.

*Atl. Coast Line*, 398 U.S. at 286-87, 90 S. Ct. at 1743 (citations omitted); *see also United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1014 (9th Cir. 1999); *Alton Box Bd. Co. v. Esprit de Corp.*, 682 F.2d 1267, 1271 (9th Cir. 1982). And, as the Supreme Court further stated, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line*, 398 U.S. at 297, 90 S. Ct. at 1748.

But is there an exception for this piece of class action litigation? Neither party contends that there is, or might be, an exception founded on an express authorization by Congress (there is no such authorization) or upon a need to protect or effectuate a judgment of the district court (there is no such judgment). That leaves the question of whether an injunction was necessary in aid of the district court's jurisdiction. *See* 28 U.S.C. § 2283.

**[10]** In general, the necessary-in-aid-of-jurisdiction exception applies to in rem proceedings where the federal court has jurisdiction over the res and the state court proceedings might interfere with that. *See Vendo Co.*, 433 U.S. at 641-42, 97 S. Ct. at 2893. But that principle does not authorize interference with parallel in personam state actions merely because the state courts might reach a conclusion before the district court does. The Court *has* said that there are times when "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line*, 398 U.S. at 295, 90 S. Ct. at 1747. But, even then, the Court went on to point out that in the case before it "the

state and federal courts had concurrent jurisdiction . . . , and neither court was free to prevent either party from simultaneously pursuing claims in both courts." *Id.*; *see also Kline v. Burke Constr. Co.*, 260 U.S. 226, 230, 43 S. Ct. 79, 81, 67 L. Ed. 226 (1922); *Sandpiper Vill. Condo. Ass'n, Inc. v. La.-Pac. Corp.*, 428 F.3d 831, 844 (9th Cir. 2005); *Bennett*, 285 F.3d at 806.

[11] Nothing in this case changed that alchemy. In this proceeding, as in others, the mere fact that the actions of a state court might have some effect on the federal proceedings does not justify interference. As the Second Circuit has pointed out:

> Any time parallel state and federal actions are proceeding against the same defendant, it is conceivable that occurrences in the state action will cause delay in the federal action, by provoking motion practice in federal court regarding the effects of state-court rulings, or simply by diverting the attention of the defendant. Such a rule [a rule that would allow an injunction to avoid delay] would in effect create an additional exception to the Anti-Injunction Act for circumstances where a federal court finds it *convenient* to enjoin related state proceedings—an approach contrary to the Supreme Court's direction that we construe doubts about the permissibility of an injunction "in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 430 (2d Cir. 2004). And the mere fact that a state court may reach a conclusion that differs from what a federal court would prefer does not change the result. *See Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1298 (5th Cir. 1992). We see nothing in this case that would militate for a different determination here.

Courts have held that the existence of advanced federal in personam litigation may, in some instances, permit an injunction in aid of jurisdiction. That is a fairly common theme.[16] *See In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 239 (3d Cir. 2002) (MDL class action where class provisionally certified and settlement preliminarily approved); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018, 1024-25 (9th Cir. 1998) (class action settlement preliminarily approved and state court action would opt out a whole subclass); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201-03 (7th Cir. 1996) (MDL case where a state proceeding would overturn the effect of a district court discovery order); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880-81 (11th Cir. 1989) (class action case had reached judgment stage and state court litigation would interfere with administration of post-judgment proceedings); *In re Baldwin-United Corp.*, 770 F.2d 328, 337-38 (2d Cir. 1985) (MDL class action where class certified, settlement agreements reached, and only district court approval of those remained); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 195, 202-04 (3d Cir. 1993) (class action where settlement imminent); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 501 F.2d 383, 383-84 (4th Cir. 1974) (per curiam) (class action case had reached judgment and state court litigation would interfere with carrying out the terms of that judgment).

But in less advanced cases, courts have been more chary about issuing injunctions, as, indeed, they should have been. For example, the Third Circuit has confronted an MDL action case where a state court was entertaining a settlement of a class action covering a class of General Motors truck owners, who alleged defective placement of fuel tanks, at the same time as an MDL class action on the same subject was before the district court. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 137 (3d Cir. 1998). The court of appeals pointed out that no settlement had

---

[16]As the ensuing citations indicate, that has often arisen in multidistrict litigation (MDL) cases, which the case at hand is not.

yet been approved by the MDL court, no provisional settlement was in hand, and no conditional class certification was extant. *Id.* at 144-45. Therefore, the state court proceeding was not the kind of interference that could justify an injunction. The Second Circuit reached the same result in a similar, but more advanced, piece of litigation. There the district court was handling an MDL securities class action arising out of the collapse of WorldCom. *See Ret. Sys.*, 386 F.3d at 421. The district court enjoined class action proceedings in an Alabama court arising out of the same collapse. *Id.* at 423. That case had been moving toward trial, and the district court enjoined it from proceeding until after there was a trial in the federal class action. *Id.* No class settlement in the MDL case was imminent, but the injunction was issued on the basis that district court trial dates should be protected. *Id.* at 428-29. The court of appeals declared that the district court "has no interest—no interest that can be vindicated by the exercise of the federal injunction power—in being the *first* court to hold a trial on the merits." *Id.* at 429. It, therefore, overturned the injunction. *Id.* at 431; *see also Zurich Am. Ins. Co. v. Superior Court*, 326 F.3d 816, 826 (7th Cir. 2003) (reversing grant of injunction where proceedings insufficiently advanced).

[12] Here, none of the considerations that have induced courts to issue injunctions despite the strictures of the Anti-Injunction Act was present. This was not an MDL case; discovery was not complete; no class settlement was imminent, in fact, as far as the record shows no serious settlement progress had been made; and, finally, there was no evidence of collusive procedures, reverse auction or otherwise, even assuming that the existence of those would justify an injunction of state proceedings.[17]

---

[17]We need not decide whether reverse auction evidence would justify an injunction of state court proceedings, as opposed to leaving correction up to the usual appellate processes. *See Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 525, 106 S. Ct. 768, 772-73, 88 L. Ed. 2d 877 (1986); *Atl. Coast Line*, 398 U.S. at 287, 90 S. Ct. at 1743.

## CONCLUSION

[13] The district court was troubled by the fact that settlements in other courts might draw the fangs from at least a portion of the class action case that it was then considering. Perhaps they will. But in this instance it was improper for the district court to react by issuing an injunction against other federal and state court proceedings.

Rather, the district court must live with the vicissitudes and consequences of our elegantly messy federal system. The restrictions inherent in the All Writs Act and explicit in the Anti-Injunction Act have helped to concinnate the elements of our national polity; this is not the time to disrupt the harmony.

REVERSED.